You may begin when you're ready. Thank you. Good morning, Your Honors, and may it please the Court. My name is Angela Johnson-Mazaros, and I'm here on behalf of appellants in this matter. You have a very soft voice. I say that as a compliment. Could you do your best to keep it up? Yes, Your Honor, I will. Thank you. And I didn't catch your very last name. Angela? Angela Johnson-Mazaros. Okay. Okay. Since there were two microphones here, I guess I thought that that would be sufficient amplification, but I will try harder. Thank you. Your Honors, I'd like to reserve five minutes of my time for rebuttals today. Thank you. Your Honors, Congress carefully crafted the new source review program at issue here to ensure that all areas in the country reach attainment of the clean air standards. Congress placed the offsetting requirement into the statute because it wanted to make sure that any new pollution that was emitted in a non-attainment area, such as the South Coast Basin, would see an equal amount of reductions occur. Counsel, would you mind moving closer to the mic? No, Your Honor, I will not mind, and I'm going to rearrange my binders so that I can make that actually happen. One of them is a recording device. The other one is amplification, I think. Okay. Just kind of, will it go up at all and then just speak a little louder? Yeah, our clerk says you should be in the middle and speak louder. The clerk says I should be in the middle and speak louder. Yeah, and point them both at you. And point them both at me. This is a very complex setup. You're doing better all the time. It seems like we're so close that I need not project, but now I don't. You're doing well. Good, now. I think that's better. I'm going to move to my thespian place here. It's a problem with double and special microphones. Thank you, Your Honor. Judge Reimer, I hope you can hear me better now. Better, thank you. Whenever I go this, like this, that means. Okay, so if an offset credit isn't valid, then what that means is that a corresponding amount of pollution hasn't been reduced in the South Coast Air Basin, and that violates federal law, and it also harms our clients. It's a tangled web that the South Coast has weaved in its papers, and I'll just point to three items in particular. First, the South Coast is creating offsets that can be and are used to meet the requirements of the Clean Air Act, but somehow its offset credits don't need to meet the requirements. And why couldn't you have sued the EPA when it approved the credit scheme in 1996 and 2006? Your Honor, we believe that the EPA did approve a credit scheme and that the EPA properly incorporated that credit scheme into the district SIP. We believe that 173C provides a separate. Yeah, but that doesn't answer my question. Why couldn't you have sued them for it? Because they didn't do anything incorrect. In 1996, when the EPA approved the program that's currently in the district SIP, the EPA properly approved the program. Our allegation is not that the program is improper, that the program has been improperly constructed. Our allegation is that the South Coast has not properly implemented the program that is in its SIP, the program that the EPA approved in 1996. So the Clean Air Act requirements are clear about what an offset needs to do in order to meet the requirements under which it was approved. And those requirements are also reflected in the SIP, but somehow the South Coast is arguing that its credits don't need to meet the requirements of the SIP. The second point that the district makes is that Section 173C is a requirement for SIPs, with which we disagree, but somehow its lawful SIP doesn't include those requirements for its own credits. Those requirements are clearly there for other people's credits, but not for its own credits. And the third point that the district makes is Congress mandated that non-attainment areas meet offset requirements in a very particular way, but somehow it's the case that that particular mandate isn't sufficiently clear that it can be enforced by citizens. I'd like to remind the Court, before I speak more about each of those three points, that we're here this morning on a complaint that involved four causes of action. Isn't the first one moot because of Rule 1315 that got rid of these challenged pre-1990 credits from the offset amounts? Your Honor, Rule 1315 has not been adopted by the EPA, has not been approved by the EPA. And therefore, Rule 1315 is not part of the SIP. When it comes time for notice and comment rulemaking on Rule 1315, then we'll address those issues in that context. But from the context of the complaint that was before the district court, Rule 1315, for all practical purposes, doesn't exist. Again, what we've alleged is that the program that exists in the SIP is the program that the district must comply with. And that program doesn't include Rule 1315. So our three causes of action that are related to the violation of SIP are not affected by Rule 1315. And then we have one cause of action that is directly under the statute, directly under Section 173C. We are here today seeking de novo review because the district court dismissed on 12b-6 and 12b-1 motion all four of those counts. We think that in the court below, in the five hearings that were had on this motion, we more than adequately met the relatively low bar for what it takes to avoid dismissal. And in essence, Your Honors, this case is actually just a straightforward statutory interpretation case. That is, the regular principles of statutory interpretation ought to apply, and we ought to give the words in the SIP, their plain language, in the context in which they are used, their plain meaning in the context in which they are used. The South Coast SIP has a program, Regulation 13, and it sets out clearly the requirements for offset creation. And the question before this Court is really if the requirements that are in the SIP ought to be applied to all credits or only to some credits. And we've alleged that it should be, and clearly by the language of the SIP, must be applied to all credits. The South Coast has argued, and the district courts agree, that the South Coast doesn't have ERCs in its account. But such an outcome is completely outside of any language that's in the SIP or any language that accompany the approval of the SIP. The district has argued, I'm sorry, the South Coast has argued that they don't have offset credits but some vague and undefined internal credits. That while those credits meet the requirements of the Act, don't need to be covered by the section of the SIP that establish what offset credits can and what offset credits must be. The EPA's own interpretation that it articulated both in 1996 and again in 2002 in response to questions about these offsets was that the district's credits, I'm sorry, I usually call them the district but in this case I have to call them the South Coast to signify I'm not talking about the district court. But that the South Coast's credits in its bank were emissions reductions credits and as such they're covered by the clear requirements that are in the SIP that the EPA has approved. I'd also just like to note for the court that in El Comité that court held essentially that the district court can't give relief by interpreting the contents of a SIP in a way that would make it outside of the requirements of the Act. And it also, that court found that it couldn't, that it in a motion that was brought in a complaint that was alleging a 304 violation couldn't also interpret the SIP in a way that made the SIP stand out of compliance with the Clean Air Act. And that's exactly what the South Coast is asking the court to do in this case. On the second point that I started with this morning, the South Coast argument is that Section 173C is a requirement of SIPs and not a requirement for sources. But somehow its SIP hasn't incorporated the requirements of 173C. It seems to us that that's just internally contradictory and frankly incredible. Now first, we believe that 173C is a direction to sources. And as such, it's something that we can bring the cause of action under directly. But even if the South Coast is correct that 173C is a requirement for SIPs and for sources, it really augments and highlights our point, which is that's right and the EPA has properly incorporated those requirements into its SIP and the district is required to follow those requirements that are part of the SIP. The third point that I'd like to make is that Congress mandated that sources in nonattainment areas have to offset their emissions and their emissions must be offset in a way that's very particular. In the statute, Congress set out these requirements because they wanted to make sure that the outcome of that is that the air in a nonattainment area wouldn't be any worse off because of the new emissions that were added by new emissions sources. That direction from Congress was clear. It was included. It is direct. And under the test that's set out in Conservation Law Foundation, which gives us a two-part test for how we can interpret when a plaintiff can go forward under 304 for a violation of the Act, we see that these emissions reductions requirements are these offset requirements are clearly emissions limitations for new sources. And we also see that Congress is very clear and specific about what a source needed to do in order to offset its requirements, in order to offset its emissions. Your Honor, I recognize I've got only minutes. Go ahead. I'm going to give you some more time. Okay. Thank you very much, Your Honor. So Conservation Law Foundation laid out the two-part test and plaintiffs, I'm sorry, and appellees have clearly met the requirements of that two-part test. Therefore, this court has jurisdiction, the district court has jurisdiction to hear the complaint that we've laid out in the court below. I'd also just like to point out that where the courts have looked at this before, they've looked at it in the context of conformity. And conformity is not the same thing as this clear emissions limitations that Congress has established for sources of emissions in a non-attainment area. With that, Your Honor, if there are no additional questions, I'm sorry. These issues seem to be largely legal and quite technical. What did you do with five hearings before Judge Wu? Five hearings you had? Was it evidentiary? We had various conversations about lots of things, about the law and lots of things. It was a very interesting experience. Five different hearings were spent. Judge Wu is very thorough, isn't he? Judge Wu wanted to contemplate completely what was happening there. And despite the time that we spent with Judge Wu, we believe that Judge Wu misunderstood some very key components, because as you noted, there are lots of complexities that one can bring into this case. Really, we believe that it's actually what does the language say in the SIP, and how does it make sense to interpret that language in the context in which it exists? And secondly, what does the act say, and is the language that's included in the act clear and concise, and does it give very clear direction to sources for what they must understand? So one of your premises is that the EPA has properly approved a program for California. And there's a state implementation plan that has to be pursued, and the plan is not conforming to what the EPA expected. Is that right? No, Your Honor. We believe that the plan does conform to what the EPA expected. But the implementation of the plan doesn't. What I'm getting at is, where's the EPA on this? Well, the EPA is not here on this. I know, but do you know? I mean, it seems to me that the EPA would be concerned. I cannot speak to why the EPA is not here, but what I can say is that Section 304 says that despite what the EPA's desire is for enforcement or to not enforce, citizens have a right to proceed to enforce. I understand that, but I'm just thinking, again, as an atmospheric, that if I were on your side, I'd want the EPA on my side jumping up and down on the other side. So I'd approach the EPA and say, hey, come on in here. Look what's happening. I would have liked for the EPA to be here. The EPA declined to do that. Oh, they declined? Well, they're not here. So by extension, they declined to do that. They are not here. They have not put forward anything about what their view is about whether or not these credits are, the district is implementing its SIP in the proper way. But I will note that jurisdiction, the jurisdictional question that's before this court, is the question about whether or not they are, in fact, implementing properly. And the EPA's position on that is not an issue in a jurisdictional case. We have the right under 304 to take to the district court a complaint that says that the district is not properly implementing the SIP, and we have the obligation to provide the district court proof of such a violation. And if we, so what we're asking here today is to be given, for the court to acknowledge that we have the right to be before the district court to provide our evidence, and we believe our evidence will show that the district is not implementing its SIP in a way that's proper. Thank you, counsel. We'll give you some time to answer what the other side has to say. Good morning, Your Honors. Bradley Hogan for the South Coast Air Quality Management District. First thing I'd like to address is to directly answer the question that Judge Trott raised. Where does EPA stand on this? EPA agrees 100 percent with the district's position in this litigation. It has expressed that opinion at two different occasions in writing in Federal Register documents. First, in 2006, there was another group called CURE, Citizens for Responsible Unions. I forget the exact name. In any case, they raised the exact same arguments before EPA that the plaintiffs are raising here during the administrative process when EPA was approving a revised version of Rule 1309.1. And what EPA responded was the credits that the district has in its internal bank do in fact meet credibility requirements in the sense that they're a quantifiable permanent surplus and enforceable, that Rule 1309, in fact, does not apply to the district's internal offsets. It only applies to the external offsets that are issued to an applicant upon an application, and that the district's bank is entirely lawful. The plaintiffs here again raised these same arguments before EPA last year in a petition, in a separate petition on a related matter. EPA's response to that petition is before this Court. This Court has granted judicial notice of that petition. And what EPA said was, again, for the second time in a formal document, the credits that are in the district's bank meet the credibility requirements. EPA made that determination in 1996. It reiterated that determination in 2006, and it again reiterated it last year in September of 2010. And also a very specific statement that Rules 1309 and Rule 1306 do not apply to the internal credits. They clearly, on their face, apply to external credits. So EPA agrees 100 percent with the district's position and has expressed so in formal documents. Well, the district court clearly was correct in dismissing the case for two reasons. The plaintiffs cannot use Section 304 to directly enforce Section 173 of the Clean Air Act, and Regulation 13 simply does not contain any creditability requirements that apply to the district's internal offsets. On the first issue, the extent that the plaintiffs are attempting to enforce Section 173, they are proceeding under the wrong statute, in the wrong court, against the wrong defendant, at the wrong time, and seeking the wrong relief. Other than that, I suppose their claim is in pretty good shape. Section 173 imposes requirements for state implementation plans. It imposes requirements for the content of those plans that EPA has to apply when EPA is going to approve or deny a state implementation plan that has been submitted. Therefore, the only way to challenge, the only way to enforce Section 173 would be to file a lawsuit under Section 307 of the Act against EPA in the Ninth Circuit's original jurisdiction shortly after the SIP is approved, which in this case was 1996, and the relief that you would get would be a revision of the SIP. You would not get the type of relief that the plaintiffs are seeking here. You would get a revision of the SIP. Section 304 is limited to cases that are seeking to enforce emission standards or limitations. And an emission standard or limitation is essentially a requirement that applies to a source of air contaminants. And a source of air contaminants, simply put, is a piece of equipment. It could be a boiler or an engine or a backup generator and so on, something that emits air contaminants. Plans do not emit air contaminants. Plans do not need to receive permits. I'm holding here a binder that has, among other things in it, the SIP. This is not emitting air contaminants. I have not needed to obtain a permit to carry it around. It is not subject to any emission standards or limitations, which would be, for example, a requirement that a boiler not emit more than a certain amount of NOx per day or operate at a certain rate or emit NOx above a certain concentration and so forth. And this is abundantly clear from the language of Section 173, both the language and the statutory context of 173. I think that the most relevant cases are the Delaware Valley case, which involved a plaintiff's attempt to enforce Section 173. I'm sorry, other sections of the Clean Air Act that impose requirements on SIPs, Sections 110 and 172. The Court rejected that attempt because Section 110 and Section 172 merely outline what a SIP is supposed to contain. And exactly the same thing can be said of Section 173. Now, the plaintiff's attempt to distinguish the Delaware Valley case because in Delaware Valley, the plaintiffs in fact sought to, the relief they sought was to revise the SIP. And they said, well, we're not seeking to revise the SIP here. Well, all that means is that the plaintiffs in Delaware Valley got one out of five things right. I mean, they filed it in the wrong court under the wrong statute at the wrong time against the wrong defendant, but they were seeking the right relief. The plaintiffs here are 0 for 5. They simply cannot use Section 304 to enforce Section 173, given the very nature of Section 173. The Court should not reach the issue as to whether or not the requirements in Section 173 are sufficiently specific or general, because the requirements by their very nature are not emission standards or limitations. There's really no reason to reach that issue. I will say in a couple sentences that the plaintiffs are focusing exclusively on Section 173C, and they're ignoring Section 173A1A. Section 173A1A is a very general requirement that says that the SIP needs to ensure that on a regional basis the emissions, the existing emissions plus a new proposed source must be sufficiently less than the existing emissions are now, such that there is a net decrease in a way that represents reasonable further progress toward attainment of the national air quality standards. That's it. That's as specific as it gets. In practice, EPA has approved many different schemes by the South Coast AQMD, the Ventura APCD, and the San Joaquin Valley APCD at least, that implement that requirement in ways that are different from each other, and in ways that are different from the standard approach set forth in Section 173C. The standard approach in 173C says the owner or operator, that is the applicant for a new permit, has to obtain offsets and provide those offsets to the district, surrender those offsets to the local agency in order to satisfy the offset requirement. Section 173A1A authorizes very different approaches, and those approaches are described in great detail in our papers. I will cite only one example. The plaintiffs argue that these credibility requirements in Section 173 are universal and fixed and so on. Well, the EPA has approved a specific requirement in the district's new source review program that allows reclaimed sources to rely on emissions reductions that are not permanent. Because the reclaimed permits are issued annually, every year, the district has allowed those facilities to demonstrate that the emission reductions have been secured on an annual basis, just a year at a time. So it's clear that there is no universal fixed requirement that emission reductions be permanent, because, in fact, the district has relaxed that requirement with the blessing of EPA when it comes to issuing new source review permits to the reclaimed facilities. The second major issue is whether Regulation 13 itself contains any credibility requirements that apply to the internal offsets. It's very clear that Rule 1309 does not apply to the district's internal offsets. 1309 applies to external offsets that are created on an application. Every section in 1309b refers to the applicant or the application. And, again, EPA flatly stated, again reiterated its position and its interpretation that Rule 1309b-4 does not, in fact, apply to the district's internal offsets. Now, the plaintiffs attempt to salvage their case by saying, well, if there's no credibility requirements in the document that apply to the internal offsets, then it must be unlawful, and this Court should interpret the SIP, in quotes, I suppose, such that it is not unlawful. Number one, essentially what the plaintiffs are asking this Court to do is to rewrite the SIP. And the district court or this Court has neither the expertise or the resources or the authority even to do so. Second, the lawfulness of the SIP is not before this Court. It's not something that the Court needs to consider. The lawfulness of the SIP should have been challenged, if at all, in 1996, within 60 days after the SIP was adopted. Third, and perhaps most importantly, the SIP is not unlawful. And, once again, plaintiffs focused exclusively on Section 173C, which applies to the standard approach for generating offsets where an owner or operator submits the offsets, to the exclusion of Section 173A1A. And, in fact, Rules 1304 and 1309.1 that rely upon the internal bank and the tracking system are complied with the broad requirement in Section 173A1A. When, against what kind of things would a citizen lawsuit be appropriate? What do these things cover? What can a citizen do? Well, I mean, within its parameters, it's fairly broad. If there is any facility that is operating in violation of an emission standard that is applied under the applicable SIP, the plaintiff can sue under Section 304 to enforce that SIP requirement. So there's a boiler that's operating in violation of its emission limitation or it's operating in violation of its permit condition, which requires it to limit the hours of operation per day, and so on. I mean, there's a host of potential requirements. The plaintiff can come in and get a judicial order enforcing that SIP provision against that source. In some cases, the defendant could be a local agency, like the district, if the district were to issue a permit to a source that is without complying with some requirement that's in the SIP, such as the requirement to obtain offsets or whatever it might be, then a plaintiff could bring a lawsuit under Section 304 enforcing that requirement that's in the SIP. But in each and every case, you're going to have a piece of equipment that is emitting air contaminants. So 304 is limited to pieces of equipment or sources? Exactly. That is exactly right. In a nutshell, that is exactly right. Section 173 poses requirements on plans. If you want to challenge a plan, you do so under 307. Plans do not emit air contaminants. They're not covered by Section 304. And basically, if you have any beefs with the whole plan itself, you've got to pursue it in a different way by coming directly to us attacking the plan, attacking the SIP. Within 60 days after the SIP is adopted. Exactly right. It would have been 1996. In this case, it would have been 1996. Do you have anything else? I don't. Did you participate in these five hearings? You know, I could be mistaken. I believe there are actually six. Six? Yes.  And I was there for all of them. Yes. Judge Wu is very thorough. This is – I think once you understand the regulatory scheme here, the issues are pretty simple. You know, 173 is, you know, requirements for plans. Break 13, no credibility requirement. But getting to that point, understanding the regulatory scheme can be a challenge. And Judge Wu had no experience with the Clean Air Act. And, you know, I think to his credit, you know, he wanted to get this right given the – Well, did he? What's that? Did he? Oh, yes, he did. He said he didn't. He is incorrect. So 1315 really doesn't have anything to do with this? That's not moot in the sense that – No, I agree that, you know, we focused in our briefs on arguments that – Yeah, that's not – the 1315 issue hasn't been raised in the briefs. No, but we focused on issues that will dispose of the entire case because there are so many rather than one. However, I will say that Judge Wu was correct in his decision when he found that the adoption of Rule 1315 mooted out the first cause of action because Rule 1315 eliminated the pre-1990 credits. It doesn't matter for this purpose. It doesn't matter that Rule 1315 has not been approved as part of the set because when the district adopted 1315, it stopped using those pre-1990 credits for any purpose, not just for purposes under the state scheme but also for purposes under the federal scheme. So he is absolutely correct that that first cause of action is moot. Thank you, counsel. Thank you. You may respond. Let's see if I can get myself set up here again in the microphone sweet zone. You heard his argument because his book can't pollute, you're out of court. Exactly. It's a very interesting argument, isn't it? The fact of the matter is that Section 304 gives citizens the right to enforce the requirements that are in the SIP, and that is what we are doing. There are requirements in the SIP embodied in Regulation 13, and we are enforcing those requirements. The South Coast has set itself in the position of taking emissions reductions and converting them into emissions reductions credits. That's what the South Coast does. There is a requirement in the SIP that's very clear, doesn't need to be rewritten by this court or any court, that has a process that the district, that the South Coast must follow. And we have alleged that that properly established requirement is included in the SIP, and we believe that this court has jurisdiction to hear our complaint about whether or not the district is properly implementing the requirements that are established in 1315. I'd like to speak for a moment about Mr. Hogan's position that the EPA spoke to this previously. He said in 1996, but I believe what he was referencing, were responses that the EPA gave to comments in 2002. And the responses that the EPA gave in 2002 are included in this record, in the excerpts of record at page 419. And what the EPA said, the very first thing at the very top of the page, when it laid out the background for its comments, it says, the South Coast Air Quality Management District administers a bank of emissions reductions credits. And it went on to say, the district uses those credits for different purposes, such as surrendering credits to ensure that an equivalent number of emissions reductions credits are provided as would be otherwise required by the Federal Clean Air Act's offset requirements. The EPA was clear then. It was clear in 1996 and remains clear now. There are requirements in the Clean Air Act under 173C, and additionally there are requirements in the SIP under Rule 1315, under Regulation 13, that require that the credits that are used meet the, are in fact real, surplus, enforceable, quantifiable. And that requirement is in the act and it is in the SIP. We have alleged the district is not properly applying that requirement. We're not asking this court to rewrite the SIP. We didn't ask the district court to rewrite the SIP, only to, we're asking this court to rewrite the opinion, and we asked the district court only to allow us to bring our evidence to show that the South Coast is not in compliance. If the EPA, additionally, Mr. Hogan made reference to a letter that the EPA wrote recently. That letter was submitted to this court in a request for judicial notice, as he indicated. And there are very clear reasons why that letter doesn't really speak to this issue. First of all, the letter that the EPA wrote was in response to a petition that was on an entirely separate issue. It was a question about when SIPs do need to be amended. And what the EPA said was the SIP is fine. It doesn't need to be amended. We agree with that. The SIP is fine, and it doesn't need to be amended. Our position is the SIP needs to be followed. And what the EPA said then, as it said in 1996, and what it said in 2002, is that the credits that the district uses to meet the requirements of the Clean Air Act have to comply with the requirements of the Clean Air Act. And you can see that that's really just a straightforward, clear interpretation of the plain language of the statute and the act. It's nothing more and nothing less. Now the South Coast would like to bring a lot of different considerations to play here, but none of those considerations have anything to do with the issue at hand, which is, is the language in the SIP clear? And is the language in the act clear? And there isn't a way that Congress set out in the Clean Air Act, one of the most thorough pieces of environmental legislation that exists, a program that allows an air-controlled district to create emissions reductions credits, the primary thing that's used to meet the standards that Congress laid out, and those emissions reductions credits don't have to be real. Congress didn't do it, and the EPA did not condone it. And that's the position that the South Coast is asking this court to take today. We are simply asking for our opportunity to provide the evidence that the district is not properly meeting the requirements that the Congress established and that the district established in its own SIP. Nothing more, nothing less. Thank you, Counsel. Thank you. The case has been well argued, well presented. It's ordered submitted. Thank you. We thank you for your help. We'll do our best to understand the system with less than six or five areas. But if you'd like for us to come back, I'd be happy to. Thank you.
judges: Beistline, Trott, Rymer